TRUSTEES OF THE MINERS' BANK OF DUBUQUE v. THOMAS.

The trustees of the Miner's Bank of Dubuque, appointed under the act
repealing the charter of that Bank, were not authorized to employ an attor-
ney, to be paid from the assets of the Bank, to carry on a *quo warranto*
suit against the officers of the Bank. The trustees were only authorized
to settle the affairs of the Bank, and could not be justified in paying from
its assets, an attorney for doing that which had already been done by the
legisislature in repealing its charter.

*Appeal from Dubuque District Court.*

*Opinion by* HALL, J.   The "*Miners' Bank of Dubuque*"
was incorporated by the territorial legislature, and had
been transacting business as a bank for several years,
when on the 21st day of May, 1845, the legislative assem-
bly passed an act repealing the charter, and authorizing
" the judge of the third judicial district to appoint two
trustees, who were to have full power to settle the affairs
of the bank, to sell and convey the personal and real estate
thereof, and to collect and pay the debts of the same.   To
sue for and recover the debts and property of the said bank,
by the name of the trustees of said bank, and to divide among
the stockholders, the money or other property that remained
after the payment of the debts and necessary expenses."

The trustees on receiving their appointment were to
take possession of the property and effects of the bank, &c.

The act provides for the trustees to give security, and to
report their doings to the judge, and for a final settlement
of the affairs of the bank, with the judge of said district.
In August, 1845, the judge appointed Benjamin Rupert
and John G. Shields trustees, under the act aforesaid, who
immediately demanded from the officers of the bank the
assets thereof.   The cashier of the Bank, under the direc-
tion of the directors, declined delivering the property to
the demandants.   Subsequent to their refusal, the district
attorney, James Grant, on his own relation, and by leave

of the district court of Dubuque county, pleaded an informa-
tion in the nature of a *quo warranto,* against the bank,
upon the ground that the president, directors, and company,
of the bank, were illegally exercising their franchise. The
case was tried in the district court, and taken to the supreme
court by writ of error. In the meantime, the appellee,
Thomas, had succeeded Grant as district attorney. The
appellee refused to prosecute said suit, as district attorney,
but agreed with Rupert and Shields, to act as counsel in
the case, and attend to other litigation, if they would pay
him a reasonable compensation out of the proceeds of the
bank when the assets should come into their hands. The
compensation was upon that condition, and it was stipulated
that they should in no event be personally liable for the
fee. Under this arrangement, the appellee went on and
attended to the *quo warranto,* and other suits in relation
to the bank. After the decision of the *quo warranto*
against the bank, by an agreement between the trustees,
Rupert and Shields and Mobley, the cashier of the bank ;
Mobley was permitted to retain the assets of the bank,
and to close up its business ; so that in fact no assets ever
came into the actual possession of the trustees, and the entire
business, contemplated by the act of the legislature, as
devolving upon the trustees, was farmed out and trans-
acted by this tenant, Mobley.

The case now under consideration, is a suit brought by
Thomas, the appellee, principally for professional services,
against the bank, in the *quo warranto* case. The plead-
ings and instructions given and refused by the court
below, assume and decide that Rupert and Shields had
power and authority to employ counsel at the expense of
the owners and stockholders of the bank, to try a suit
brought by the state, on the relation of the district attor-
ney, against the bank, to take from them a franchise that
they claimed.

Had this suit sought to charge Rupert and Shields, individually, and the contract allowed a recovery, the law would have sanctioned it, for a private person may be, and often is interested in the dissolution of a franchise of this kind; but as trustees appointed by the judge of the third district, under the act of May 21, 1845, their right and power must come from the act itself; that act assumes —and no other construction can possibly be allowed—that the repeal of the charter of the bank was a dissolution of the corporation. The power, therefore, intended to be conferred upon the trustees, was simply ministerial, to settle its affairs, to sell and convey personal and real estate, to collect debts due the bank, and to pay debts owing by the bank; to divide the residue, after paying the debts and expenses, among the stockholders. This act creates duties and creates powers. The expenses could only arise in the discharge of the duties and a proper exercise of the power conferred. It can hardly be contended that the act of the 21st of May conferred a power upon the contem plated trustees, to do an act which the statue itself declared as its principle object. The franchise of the bank was declared repealed, and the corporation dissolved; and the trustees were merely administrators to settle up the estate. Yet it is claimed that they were empowered to carry on a suit against the resisting corporation, to test the validity of its franchise, that they could draw from the funds of the bank the money necessary to crush and destroy its lawful struggles for existence. The trustees certainly had no power to contract away the assets of the bank for any such purpose. Their powers were limited to such acts alone as pertained to closing the pecuniary matters of the bank, to do what the officers of the bank could do before its charter was repealed; and they were confined to those acts which could only be performed after the assets had been surrendered. They had no powers or duties beyond the mere act of qualifying, until they become trustees *de*

*facto,* by obtaining the property and money of the bank.

If, after the appointment of the trustees, they found that the bank refused to surrender its assets, and this trust was about to fail for a want of the property and funds to administer upon, they should—as they probably did—report that fact to the proper government officers. It then became the duty of the government to enforce the law by subjecting the bank to its requisitions. The franchise claimed by the owners of the bank, was a part of the prerogative of the government, and the trustees had no individual interest in having it declared forfeited, and it would be a reproach upon the legislature to suppose that they had authorized or appointed trustees to carry on a proceeding of this character. The first section of the " act relating to informations in the nature of *quo warranto,*" &c., Rev. Stat. 504, authorizes the " *Governor,* or the legislative assembly, to direct the district attorney to file an information in the nature of a *quo warranto,*" against any association of persons who shall act as a corporation, within the territory, without being lawfully incorporated ; also, the district attorney to file such information on his own motion. Thus it will be seen that there was no legal necessity or plausibility of right in these trustees interfering in the matter ; much less had they the power to squander the property of their *cestui que use,* in carrying on litigation which they themselves were resisting. The legislative act repealing the charter of the bank, and authorizing the judge of the the third judicial district to appoint trustees, making all the proceedings *ex parte,* is the exercise of power that approaches the very verge of constitutional limits, and certainly the courts will not extend the powers conferred by that act by implication.

The instructions of the court below are clearly erroneous. The judgment will therefore be reversed; and inasmuch as there are some items in the account of the appellee that may be a proper charge, as legitimate expen-

ses of the trustees, the case will be remanded to the district court of Dubuque county for trial *de novo*.

*Clark* and *Bissell*, for appellants.

*L. A. Thomas*, *pro se*.